DARNELL FOREST,                     )
                                    )
            Plaintiff,              )
                                    )
      vs.                           )      No. 4:07CV258-DJS
                                    )
BARNES JEWISH HOSPITAL, et al.,     )
                                    )
            Defendants.             )

## ORDER

Now before the Court are defendant Genelda Cornelison's ("defendant Cornelison") motion for summary judgment [Doc. #76], defendant Mary Arnold's ("defendant Arnold") motion for summary judgment [Doc. #78], and defendants Barnes-Jewish Hospital ("defendant Hospital") and Patrick Barnes' ("defendant Barnes") motion for summary judgment [Doc. #80]. Pro se plaintiff Darnell Forest has opposed defendants' motions, defendants have filed reply briefs, and plaintiff has filed two sur-reply briefs. Accordingly, defendants' motions are ripe for disposition.

### I. Procedural History

In April 2004, plaintiff filed a lawsuit in state court against defendant Hospital and various employees of defendant Hospital, in which he alleged several counts of employment discrimination. On June 3, 2004, the case was removed to this Court. After dismissing several of plaintiff's claims, the Court granted summary judgment in defendants' favor and, on August 8,

2006, issued final judgment in defendants' favor on all remaining claims asserted by plaintiff.

In February 2007, plaintiff filed another lawsuit against defendant Hospital (the action now before this Court), alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 et seq.[1] Because plaintiff attempted in his February 2007 lawsuit (and in his first amended complaint filed on July 26, 2007) to assert some of the same claims that he made in his 2004 lawsuit, the Court issued a claim preclusion order on July 26, 2007. In its order, the Court precluded all of plaintiff's claims except for the Title VII, 42 U.S.C. §1981, and ADEA claims of: (1) retaliatory discharge; (2) failure to promote to Senior Staff Review; and (3) disparate training.

In July 2007, plaintiff filed another lawsuit in the Circuit Court of the City of St. Louis, Missouri. In this lawsuit, plaintiff asserted the same discrimination and retaliation claims

---

[1]In August, 2006, plaintiff filed a charge of discrimination against defendant Hospital, in which he again alleged employment discrimination. In this charge of discrimination, plaintiff alleged that he was discriminated against because of his age, race, and in retaliation for filing his previous lawsuit. In his charge of discrimination, plaintiff further alleged that he was denied a promotion to the Senior Staff Review role and was trained differently than other employees. Plaintiff did not file a charge of discrimination against defendant Barnes. Finally, the Court notes that although plaintiff did not mark the "gender" checkbox on his charge of discrimination, he does make reference to "females" getting trained on new equipment. Accordingly, the Court will consider plaintiff's gender discrimination claims. See Doc. #82-14.

he made in his first amended complaint pending before this Court, and also added claims under the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. §213.010 et seq., and three additional defendants, defendants Barnes, Cornelison, and Arnold. Plaintiff's state court action was removed and consolidated with this action, after which plaintiff was ordered by this Court to file a second amended consolidated complaint. With the exception of a newly asserted "retaliatory harassment" claim (asserted against defendant Hospital), "conspiracy" claim (asserted against defendant Cornelison), and "negligent investigation" claim (asserted against defendant Arnold), plaintiff brings only those claims not dismissed by the Court's July 26, 2007, order.

On March 4, 2008, defendants filed their respective motions for summary judgment, each arguing that no genuine issues of material fact exist and that they should be granted judgment as a matter of law. These motions are now before this Court.

## II. Standard of Review

As an initial matter, the Court notes that plaintiff filed his second amended complaint pro se, and as such is held "to less stringent standards than formal pleadings drafted by lawyers." Ellis v. Butler, 890 F.2d 1001, 1003 (8th Cir. 1989) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). Nevertheless, plaintiff must comply with substantive and procedural law. See Am. Inmate Paralegal Ass'n v. Cline, 859 F.2d 59, 61 (8th Cir. 1988).

In considering a motion for summary judgment, the Court must "view all of the evidence in the light most favorable to the nonmoving party and [will] give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings." Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. "Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, the 'nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003) (quoting Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998)).

In ruling on a motion for summary judgment, "a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from 'assuming' that general averments embrace the 'specific facts' needed to sustain the complaint." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Consequently, in order to withstand a motion for summary judgment, evidence submitted by a

non-movant must contain specific facts, and general statements will

not be supplemented by a court's assumptions.

> It will not do to "presume" the missing facts
> because without them the affidavits would not
> establish the injury that they generally allege.
> That converts the operation of Rule 56 to a
> circular promenade: plaintiff's complaint makes
> general allegation of injury; defendant contests
> through Rule 56 existence of specific facts to
> support injury; plaintiff responds with affidavit
> containing general allegation of injury, which
> must be deemed to constitute averment of
> requisite specific facts since otherwise
> allegation of injury would be unsupported (which
> is precisely what defendant claims it is).

Id. at 889. Further, the Court notes that it is "'not required to

speculate on which portion of the record the nonmoving party

relies, nor is it obligated to wade through and search the entire

record for some specific facts that might support the nonmoving

party's claim.'" White v. McDonnell Douglas Corp., 904 F.2d 456,

458 (8th Cir. 1990) (quoting InterRoyal Corp. v. Sponseller, 889

F.2d 108, 111 (6th Cir. 1989)).

### III. Facts

For purposes of these motions, the Court finds that the

following facts are not in dispute, or have not been properly

controverted pursuant to E.D.Mo. L.R. 7-4.01(E).[2]  The following

facts are those established by the depositions, affidavits, and

---

[2]"All matters set forth in the statement of the movant shall be
deemed admitted for purposes of summary judgment unless specifically
controverted by the opposing party."  E.D.Mo. L.R. 7-4.01(E).

records submitted by the parties, and are viewed in the light most favorable to plaintiff.

Defendant Hospital hired plaintiff as an at-will, part-time lab assistant for the evening shift in the Microbiology Lab on September 6, 2000. Plaintiff was forty-nine years old when defendant Hospital hired him. Plaintiff was subsequently transferred to the Hematology Lab, managed by defendant Barnes, on April 2, 2001.[3] Plaintiff was fifty years old when he received this transfer.

Less than two months after plaintiff was transferred to the Hematology Lab, defendant Barnes approached plaintiff and offered him a promotion to a non-registered medical technologist position in the Hematology Lab. Plaintiff was fifty years old when he received this promotion from defendant Barnes.

In March 2002, plaintiff obtained certification as a medical technologist from the National Credentialing Agency. Defendant Barnes promoted plaintiff again on April 28, 2002, this time to a registered medical technologist position. Plaintiff was fifty-one years old when he received this promotion.

---

[3]The Hematology Lab at defendant Hospital is one of five major laboratories that comprise the Department of Laboratories. Hematology plays a vital role in the diagnosis, treatment, and follow-up of some of defendant Hospital's most critically ill patients. In addition to providing initial screening of virtually all patients that enter defendant Hospital, Hematology is key in the detection, diagnosis, and treatment of serious blood disorders such as anemia, sickle cell disease, chronic and acute blood loss, as well as cancers of the blood.

In January 2005, plaintiff received a transfer to the Hematology Lab's day shift. As a result, defendant Cornelison became plaintiff's direct supervisor. On February 19, 2007, plaintiff took a Family Medical Leave of Absence ("FMLA leave") from work. Plaintiff was initially scheduled to return from leave on March 5, 2007. However, plaintiff's leave was extended through March 19, 2007.

In early 2007, defendant Hospital purchased a new piece of Hematology Lab equipment called the "IRIS." In 2006, the Hospital sent six employees (two from each shift) to the IRIS manufacturer's facility in San Diego, California to train on the IRIS so they could subsequently train the other medical technologists in the Lab. The training for the first shift staff on the IRIS began on March 19, 2007. Defendant Cornelison, the first shift supervisor, prepared the first shift IRIS training schedule. When defendant Cornelison prepared the IRIS training schedule, plaintiff was on FMLA leave. Defendant Cornelison states that, as a result, she assigned plaintiff toward the end of the training schedule to ensure that he was back from FMLA leave when his training occurred. Plaintiff disputes this, and states that his training assignment was the result of discrimination. Plaintiff's training on the IRIS occurred on April 18 and 19, 2007. He was the second to last person on his shift to be trained. Other African-American employees were trained in the beginning and the middle of the training schedule.

The Hematology Lab utilizes what is called a Performance Standards Program ("PSP") to measure employees' performance. Pursuant to the PSP, employees are assessed points based on a rolling twelve-month calendar and upon the type of infraction that the employee commits. Once an employee reaches ten points on the PSP, the employee is given a first written notice of corrective action. Once an employee reaches twelve points, the employee is given a final written warning of corrective action. Once an employee reaches fourteen or more points, he is subject to termination of employment.

On April 4, 2007, plaintiff received a first written notice of corrective action. Plaintiff received this first written notice of corrective action because he had received ten points within a twelve-month period.[4] The performance points that led to plaintiff's April 4, 2007, first written notice occurred in connection with a specimen error he committed on August 23, 2006 (two points), and manual reporting errors he committed on December 4, 2006, and February 8, 10, and 13, 2007 (two points each). Plaintiff was not provided his first written notice of corrective action until he returned from FMLA leave. On April 2, 2007, and April 10, 2007, plaintiff committed two additional testing errors that led to the assessment of three additional points pursuant to the PSP. The assessment of two points in connection with the April

_____

[4]Plaintiff argues that he contested the points given. Nevertheless, it is not disputed that plaintiff was assessed these points.

10, 2007, testing error progressed plaintiff along the PSP to twelve points, which subjected him to a final written warning. Plaintiff was issued the final written warning on April 25, 2007.

Prior to the issuance of plaintiff's final written warning, plaintiff filed an employee appeal of his first written notice of corrective action on April 11, 2007. In this employee appeal, plaintiff complained that his lab manager and supervisor were retaliating against him because he had filed a lawsuit, and that they were discriminating against him in various ways. On June 18, 2007, plaintiff committed another lab error when he failed to enter results for a test that he had run. On June 21, 2007, plaintiff met with defendants Barnes, Cornelison, and Arnold, one of the hospital's senior human resources consultants.[5]

Plaintiff committed another reporting error on July 4, 2007,[6] which progressed plaintiff to sixteen points on the PSP. On July 16, 2007, when Plaintiff had not provided any additional information to support his employee appeal, plaintiff's employment with defendant Hospital was terminated.

---

[5]The parties dispute what happened during this meeting. Defendants state that defendant Arnold gave her response to plaintiff's employee appeal. Plaintiff, however, maintains that no response was ever provided. Nevertheless, there is no dispute that these parties met and discussed something on June 21, 2007.

[6]Plaintiff states that the a fellow employee, Dan Adank, is actually the individual who committed the reporting error for which plaintiff was assessed two points. Nevertheless, it is not disputed that plaintiff was assessed additional points on July 4, 2007.

With regard to his failure to promote claim, plaintiff testified that defendant Barnes refused to "promote" plaintiff to the Senior Staff Review role because of plaintiff's gender, age, race, and in retaliation. While plaintiff alleges that the Senior Staff Review role would have been a promotion, the Senior Staff Review role does not involve more money or benefits, and is simply the performance of secondary slide review.[7] Plaintiff testified that he wanted the Senior Staff Review role because he thought it would be an advancement and was more prestigious. Plaintiff also testified that, even though he did not attain a Senior Staff Review role, his pay continued to increase and he did not receive any decrease in benefits.

Defendant Barnes states that he made the decision to give the Senior Staff Review role to Sherry Bernard (plaintiff's co-worker, who is white and a woman) because she told him she was interested in performing those duties. Further, Bernard had more than fourteen years of experience as a medical technologist. Plaintiff alleges that he told his supervisor, defendant Cornelison, that he was interested in the Senior Staff Review role. Defendant Cornelison states that she does not recall plaintiff telling her about his interest, and defendant Barnes states that he had no idea plaintiff was interested in the position.

---

[7]Plaintiff testified in his deposition that he does not know whether receiving the Senior Staff Review role would have increased his pay or provided him any additional benefits.

With regard to his race and gender, plaintiff believes that he did not get the Senior Staff Review role because he is a black male,[8] and that no black males have made advancements in the Hematology Lab. With regard to retaliation, plaintiff maintains that filing his 2004 lawsuit and complaining about receiving performance points are the reasons he did not receive the Senior Staff Review role. With regard to his race and age, plaintiff stated in his deposition that he has no evidence to support his claim.[9]

_____

[8]Plaintiff states that race was a motivating factor, and that the proof is that he is a "dark skinned black male." Doc. #100, p. 6.

[9]The Court notes the following excerpt from plaintiff's deposition:

> Q: What evidence do you have that shows that Mr. Barnes did not select you for the senior staff review role because of your age?
>
> A: What evidence I have?
>
> Q: Yes sir.
>
> A: That he didn't come up and tell me that, so –
>
> Q: Did anybody tell you that?
>
> A: I have no evidence.
>
> Q: Okay. Why do you believe Mr. Barnes did not select you for the senior staff review role because of your race?
>
> A: Because I was black.
>
> Q: Any other reasons you believe he did not select you because of your race?
>
> A: No.
>
> Q: What evidence do you have that Mr. Barnes did not select you for the senior staff review role because of

With regard to plaintiff's claim of disparate training, plaintiff alleges discrimination (based on his race and status as a black male), and retaliation. However, when he was asked, "You don't believe gender had anything to do with the way you were trained," plaintiff responded, "Correct." When asked if he believed that his age had anything to do with the way he was trained, he answered "No." Doc. #82-5, p. 11.

With regard to plaintiff's claim of "retaliatory harrassment," plaintiff states that in late June 2007, he attended a meeting with defendants Barnes, Arnold, and Cornelison. Plaintiff further states that he was led to believe during this meeting that his employment was going to be terminated, and that human resources was waiting to process his termination until it received certain paperwork from the Hematology Lab. Plaintiff states he was harassed because his termination of employment did not occur for approximately two to three weeks after this meeting. Defendants claim that plaintiff's termination was delayed because he informed defendants Arnold, Barnes, and Cornelison that he had

---

your race?

A: None.

Q: Why do you believe Mr. Barnes did not select you for the senior staff review role because of retaliation?

A: Because of my complaints, my lawsuit.

Doc. #82-5, pp. 10-11.

documents that would further support his employee appeal. Plaintiff admits that defendant Barnes asked plaintiff for that information some time after the meeting occurred. Plaintiff further states that he did not give defendant Barnes those documents, but that no one told him doing so could save his job. Plaintiff argues that letting "me [] work knowing I was fired all of those days tormenting me and my family" was retaliatory harassment. Doc. #100, p. 8.

In his deposition, plaintiff testified that the only claim that he is bringing against defendant Cornelison is the claim that she "conspired" with defendant Barnes to terminate his employment with defendant Hospital.[10] Plaintiff also testified that

---

[10]The Court notes the following excerpt from plaintiff's deposition:

> Q: Do you think Genelda terminated your employment because of your gender? We'll get to the conspiracy.
>
> A: No.
>
> Q: Okay. Do you think Genelda terminated your employment because of your race?
>
> A: No.
>
> Q: Do you think Genelda terminated your employment because of your age?
>
> A: No.
>
> Q: Do you think Genelda terminated your employment because you're a black male?
>
> A: No.
>
> Q. Do you think Genelda terminated your employment because of retaliation?
>
> A. No.

the only claim that he is bringing against defendant Arnold is "negligent investigation," that is, that defendant Arnold was negligent in investigating his April 2007 employee appeal and complaints about the poor treatment he was subjected to by the Hematology Lab management.

## IV. Discussion

The Court finds that plaintiff's second amended complaint contains the following claims. First, plaintiff alleges that defendant Cornelison civilly conspired with defendant Barnes to terminate wrongfully plaintiff's employment. Further, plaintiff alleges that defendant Arnold negligently investigated his employment complaints and employee appeal. Plaintiff also alleges race, gender, and age discrimination, as well retaliation, against defendant Barnes and defendant Hospital. In this regard, plaintiff alleges that he received disparate training on the IRIS, that he was not promoted to the Senior Staff Review role, and that his employment was terminated because of discriminatory and retaliatory animus. Finally, plaintiff alleges retaliatory harassment against defendant Hospital.

## A. Defendant Genelda Cornelison

---

Q. Okay. Tell me what your conspiracy theory is?

A. I believe Genelda, to satisfy her boss, she carried out her duties at his request from the point that he requested for her to do because he needed information to terminate me.

Doc. #82-5, pp. 30-31.

14

Plaintiff alleges that defendant Cornelison conspired with defendant Barnes to terminate wrongfully plaintiff's employment with defendant Hospital. For a claim of civil conspiracy brought pursuant to Missouri law to withstand a motion for summary judgment, a plaintiff must sufficiently set forth facts that support the following elements: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and, (5) the plaintiff was thereby damaged. Envirotech, Inc. v. Thomas, 259 S.W.3d 577, 586 (Mo. App. 2008). "The term unlawful, as it relates to civil conspiracy, is not limited to conduct that is criminally liable, but rather may include individuals associating for the purpose of causing or inducing a breach of contract or business expectancy." Id. at 586 n.8. The facts must demonstrate that "the minds of the parties met with regard to the object to be accomplished." Hunt v. Air Prods. & Chems., 2006 WL 1229082, at *3 (Mo. Cir. 2006). Further, the conspiracy itself is not actionable. Rather, "the unlawful act done in pursuance thereof is actionable, and the conspiracy has to do only with the joint and several liability of the co-conspirators." Intertel, Inc. v. Sedqwick Claims Mgmt. Servs., Inc., 204 S.W.3d 183, 205 (Mo. App. 2006).

In this case, plaintiff has not come forward with any evidence that defendant Cornelison knowingly agreed to discriminate or retaliate against plaintiff. That is, plaintiff has not shown that there is a genuine issue of material fact for trial regarding

a meeting of the minds between defendants Cornelison and Barnes. Rather, plaintiff testified at his deposition that defendant Cornelison's part in his termination was not "her concern, that it was Patrick Barnes' concern that Genelda was doing her duties as her boss requested her to do." Doc. #85-2, p. 32. Further, there is no evidence that defendant Cornelison's actions were motivated by discriminatory or retaliatory (that is, illegal) animus. Indeed, plaintiff acknowledged defendant Cornelison's lack of animus in his deposition, and that defendant Cornelison did not act with any discriminatory or retaliatory motive. Accordingly, plaintiff's state law civil conspiracy claim fails as a matter of law.

To pursue a claim for civil conspiracy under 42 U.S.C. §1985(3),[11] a plaintiff must sufficiently set forth facts supporting four elements: (1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive plaintiff either directly or indirectly of his civil rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to person or property or the deprivation of a civil right.[12] Mettler v. Whitledge, 165 F.3d 1197, 1206 (8th Cir. 1999). To satisfy the first element, a

---

[11]Plaintiff does not specifically state whether he brings his conspiracy claim pursuant to Missouri or federal law. Accordingly, the Court will analyze his claim pursuant to both.

[12]The Court notes that 42 U.S.C. §1985(1), (2) are not applicable in this case.

plaintiff must allege that the defendants "did conspire," that is, allege that an agreement existed between the defendants in the conspiracy. <u>Andrews v. Fowler</u>, 98 F.3d 1069, 1079 (8th Cir. 1996). Further, to maintain an action under 42 U.S.C. §1985(3), a plaintiff <u>must</u> allege "that the conspiracy is fueled by some 'class-based, invidiously discriminatory animus.'" <u>Id.</u> (quoting <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 268 (1993)); <u>see also</u> <u>Dornheim v. Sholes</u>, 430 F.3d 919, 924 (8th Cir. 2005) (holding that the purpose of the animus requirement was to keep 42 U.S.C. §1985(3) from becoming a general federal tort law).

In this case, similar to his civil conspiracy claim under Missouri law, plaintiff's federal civil conspiracy claim fails because he has not come forward with any evidence that demonstrates that an agreement existed between defendants Cornelison and Barnes. Further, plaintiff fails to allege or come forward with facts demonstrating that defendant Cornelison's action were fueled by some class-based or discriminatory animus. Indeed, as stated above, plaintiff acknowledged in his deposition that defendant Cornelison did not act with any discriminatory or retaliatory motive. Accordingly, plaintiff's federal civil conspiracy fails as a matter of law.

Plaintiff fails to allege or set forth sufficient facts to support his claim for civil conspiracy against defendant

Cornelison.[13]   Accordingly, the Court will grant defendant Cornelison's motion for summary judgment.

## B. Defendant Mary Arnold

Plaintiff alleges that defendant Arnold was negligent in performing her duties as a fact finder with regard to his employment complaints and his employee appeal.[14]  To wit, plaintiff testified that defendant Arnold "was negligent in not investigating [plaintiff's] claims thoroughly."  Doc. #82-5, p. 34.  "Missouri courts have not recognized a tort of 'negligent investigation' or 'negligent discharge....'"  <u>Wirth v. Coll. of the Ozarks</u>, 26 F. Supp. 2d 1185, 1189 (W.D. Mo. 1998)  (dismissing for failure to state a claim upon which relief could be granted plaintiff's claim that his employer "negligently failed to investigate his concerns during his removal from tenure"); <u>see also, e.g.,</u> <u>Lambert v. Morehouse</u>, 843 P.2d 1116, 1119-20 (Wash. App. 1993) ("As a matter of policy, we conclude that tort liability for negligent investigation is...inappropriate in the employment relationship....[I]f an employment relationship is at will, then a claim for the tort of negligence would appear to conflict with the

_____

[13]Further, the Court notes that plaintiff's civil conspiracy claim fails because, as discussed below, he has not sufficiently created a genuine issue of material fact demonstrating that he was <u>wrongfully</u> terminated.  That is, plaintiff has not shown the object of the conspiracy was illegal.

[14]The Court notes that plaintiff does not believe defendant Arnold discriminated against him because of his gender, race, or age, or that she retaliated against him in any way.  <u>See</u> Doc. #82-5, p. 33.

employer's right to discharge the employee for any cause or no cause without liability."). As there is no negligent investigation cause of action under Missouri law, the Court will grant defendant Arnold's motion for summary judgment.

## C. Defendants Barnes-Jewish Hospital and Patrick Barnes

Plaintiff alleges race, gender, and age discrimination, as well retaliation, against defendant Barnes and defendant Hospital. In this regard, plaintiff alleges that he received disparate training on the IRIS due to race discrimination and in retaliation; the he was not promoted to the Senior Staff Review role because of age, gender, and race discrimination and in retaliation; and was terminated because of discriminatory and retaliatory animus.

### 1. Un-Exhausted Claims

Claims bought under Title VII, the ADEA, or the MHRA are subject to certain time and exhaustion requirements. For instance, Title VII requires that a complainant's administrative charge of discrimination be filed with the EEOC

> within one hundred and eighty days after the alleged unlawful employment practice occurred..., except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency..., such charge shall be filed...within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings

> under the State or local law, whichever is
> earlier[.]

42 U.S.C. §2000e-5(e)(1). Similar administrative exhaustion requirements apply to claims brought pursuant to the ADEA and MHRA. See 29 U.S.C. §§626(d), 633(b); Mo. Rev. Stat. §213.075(1). The EEOC is then required to investigate the charge and the complainant must allow at least 180 days for the investigation to proceed. If, after 180 days, the EEOC has not resolved the charge, it must notify the complainant, generally through the issuance of a "Notice-of-Right-to-Sue" letter, in which it states that it sees no reason to take further action. If a claimant wishes to pursue a private action, he must file it within ninety days of the date on which he has notice of the EEOC's decision not to pursue the administrative charge any further. See 42 U.S.C. §2000e-5(f)(1). Similar time windows exist for charges under the ADEA and the MHRA. See 29 U.S.C. § 626(e); Mo. Rev. Stat. §213.111(1).

> In order to initiate a claim under Title VII a party must timely file a charge of discrimination with the EEOC and receive a right-to-sue letter. To initiate a claim under the MHRA a party must timely file an administrative complaint with [the Missouri Commission on Human Rights] and either adjudicate the claim through the [Missouri Commission on Human Rights] or obtain a right-to-sue letter. Exhaustion of administrative remedies entitling a claimant to bring a cause of action, under both statutes, requires a claimant to give notice of all claims of discrimination in the administrative complaint.

Stuart v. Gen. Motors Corp., 217 F.3d 621, 630 (8th Cir. 2000) (emphasis added) (citations omitted).

Defendants argue that, despite plaintiff's numerous allegations, he failed to allege in his <u>charge of discrimination</u> either discriminatory or retaliatory termination of employment, and that such claims should be dismissed for failure to exhaust administrative remedies. Plaintiff has failed to rebut this assertion, and nothing before the Court demonstrates that plaintiff's instant discriminatory or retaliatory termination claims were presented at the administrative level. As this Court is without jurisdiction to hear claims that were not raised by a plaintiff at the administrative level, defendant Barnes and defendant Hospital will be granted summary judgment with regard to plaintiff's claims of discriminatory and retaliatory termination of employment.[15]

## 2. Exhausted Claims

Plaintiff's failure to promote and disparate training claims based on his age, gender, and race, and in retaliation (as set forth in his EEOC charge of discrimination), are properly before this Court. That is, in his charge of discrimination, plaintiff alleged that he was denied a promotion to the Senior Staff Review position, and that he was trained differently than other employees. These employment discrimination claims are

---

[15]Even if the Court were to consider plaintiff's exhausted claims, the Court finds that defendants have come forward with a legitimate, non-discriminatory reason for terminating plaintiff's employment, and plaintiff has not sufficiently shown that defendants' proffered reason is a pretext for illegal discrimination or retaliation.

analyzed under the familiar burden-shifting scheme developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas framework, the initial burden rests with a plaintiff, who must establish a prima facie case of discrimination by a preponderance of the evidence. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); see also Carpenter v. Con-Way Cent. Express, Inc., 481 F.3d 611, 616 (8th Cir. 2007). To do so, a plaintiff must show that "(1) he is a member of a protected class, (2) he was meeting his employer's legitimate job expectations, (3) he suffered an adverse employment action, and (4) 'similarly situated employees outside the protected class were treated differently.'" Carpenter, 481 F.3d at 616 (quoting Shanklin v. Fitzgerald, 397 F.3d 596, 602 (8th Cir. 2005), cert. denied, 546 U.S. 1066 (2005)).

After a plaintiff has made a sufficient showing of a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. Gordon v. Shafer Contracting Co., 469 F.3d 1191, 1196 (8th Cir. 2006). Once such a reason is articulated, the burden of production shifts back to the plaintiff to demonstrate that the proffered nondiscriminatory reason is a pretext for intentional discrimination. Id. At this third step, a plaintiff is obligated to present evidence that (1) creates a question of material fact as to whether a defendant's proffered reasons are pretextual and (2) creates a reasonable inference that race was a determinative factor

in the adverse employment decision.  See Stewart v. Independent Sch. Dist. No. 196, 481 F.3d 1034, 1043 (8th Cir. 2007); Logan v. Liberty Healthcare Corp., 416 F.3d 877, 880 (8th Cir. 2005); Keathley v. Ameritech Corp., 187 F.3d 915, 922 (8th Cir. 1999).

Quarreling with the soundness of a business' judgment in selecting one employee over another employee for promotion, without more, is not evidence of discrimination.  Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 945 (8th Cir. 1994) (discussing business judgment in the context of a dismissal).  Further, disputes concerning the seriousness of various incidents "merely question[] the soundness of [a] defendant's judgment."  Id.  An employer may develop arbitrary, ridiculous, and even irrational policies so long as they are applied in a non-discriminatory manner, and discrimination claims do not require or authorize a court to engage in examination of the wisdom of an employer's judgment in personnel matters.  See, e.g., McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 512 (8th Cir. 1995); Smith v. Monsanto Chem. Co., 770 F.2d 719, 723 n.3 (8th Cir. 1985). Employment discrimination laws prohibit "intentional discrimination based on certain, discrete classifications; [they] do[] not prohibit employment decisions based on other factors, such as job performance, erroneous evaluations, personality conflicts, or even unsound business practices."  Rose-Maston, 133 F.3d at 1109.

Evidence that similarly-situated employees were treated differently can be evidence of unlawful discrimination.  To show

that other employees are similarly situated, a plaintiff is "required to point to individuals who 'have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'" Marquez v. Bridgestone/Firestone, Inc., 353 F.3d 1037, 1038 (8th Cir. 2004) (quoting Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000)). "Employees are similarly situated when they are involved in or accused of the same offense and are disciplined in different ways," and the test is a rigorous one. Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994) (quotation omitted). Offering nothing more than an opinion that other employees were not treated similarly is insufficient to create a genuine issue of fact for trial, and a plaintiff must substantiate his allegations with more than "speculation, conjecture, or fantasy" in order to survive summary judgment. Marquez, 353 F.3d at 1038 (quoting Putman v. Unity Health Sys., 348 F.3d 732, 733-34 (8th Cir. 2003)).

After considering plaintiff's claim for disparate training, the Court finds that plaintiff has not established a prima facie case of discrimination or retaliation. To wit, plaintiff has clearly not demonstrated the third element of a prima facie case, that plaintiff suffered an adverse employment action. Indeed, plaintiff is not claiming that defendants failed to train him at all, or that his training occurred outside the scheduled training period. Rather, plaintiff argues that being the second to

24

last person scheduled to be trained was done purposefully and with discriminatory and retaliatory animus. Training on the IRIS started on March 19, the day plaintiff returned from FMLA leave. Plaintiff was trained on April 18 and 19. The Court finds, as a matter of law, that this one month delay in training did not materially disadvantage plaintiff, and is therefore not an adverse employment action within the meaning of federal law. See Higgins v. Gonzales, 481 F.3d 578, 584 (8th Cir. 2007) ("Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard, as would circumstances amounting to a constructive discharge. Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage do not satisfy the [third] prong."); see also Recio v. Creighton Univ., 521 F.3d 934, 940 (8th Cir. 2008) (stating that most of plaintiff's allegations "are akin to the sort of trivial harms that do not rise to the level of retaliation").

Similarly, with regard to plaintiff's claim for failure to promote, the Court finds that defendants' failure to select plaintiff for the Senior Staff Review role is not an adverse employment action. Plaintiff has not come forward with any evidence that demonstrates his pay, benefits, or future career prospects were affected in any way. Accordingly, the Court finds that plaintiff has not established a prima facie case for discriminatory or retaliatory failure to promote.

Nevertheless, the Court finds that even if plaintiff can establish a prima facie case for discrimination and retaliation, defendants have articulated legitimate, nondiscriminatory reasons for their employment decisions vis-a-vis plaintiff. Defendants have sufficiently set forth a reason that plaintiff was scheduled second to last on the IRIS (because of his return date from FMLA leave), and that he was not promoted to the Senior Staff Review role because the woman who was promoted had indicated an interested in the position and had more than fourteen years of experience as a medical technologist. Accordingly, the burden shifts back to plaintiff to demonstrate that these proffered reasons are pretexts for illegal discrimination and retaliation.

Plaintiff states, as proof of discrimination and retaliation, that he is an African-American male, and that he complained about the PSP and filed a lawsuit. However, more evidence is required to show that defendants illegally discriminated and retaliated against plaintiff. See Bogren v. Minnesota, 236 F.3d 399 (8th Cir. 2000) (finding that the fact that terminated trooper was the only black female trooper, and one of a few black troopers, ever employed by state patrol was insufficient to establish a genuine issue of pretext); Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832 (8th Cir. 2002) ("Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation.").

Plaintiff also claims that he was treated differently than similarly-situated younger, non-male, or non-African-American persons, or persons who did not file lawsuits or complain about the PSP.  However, although plaintiff asserts that similarly-situated younger, female, or non-African American employees, or those who did not file lawsuits or complain about the PSP received preferential treatment, he presents little evidence to support such claims, other than his own unsubstantiated and generalized allegations.  The Court finds that plaintiff fails to create a genuine issue of material fact which, if proven at trial, demonstrate that younger, non-male, or non-African-American employees, or persons who did not file lawsuits or complain about the PSP were similarly situated and were treated differently.  Further, because the Court does not sit as a review board of the fairness of personnel decisions, other than to determine unlawful discriminatory motives, even if the Court were to consider plaintiff's allegations concerning the comparative treatment of other employees, his federal discrimination claims are not supported as required by law.

Plaintiff also alleges discrimination pursuant to the MHRA.  The MHRA prohibits any employer from discriminating against any individual "with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability...."  Mo. Rev. Stat. §213.055.1(1)(a).  The

standards for claims brought pursuant to the MHRA, while similar to federal standards, "are not identical to the federal standards and can offer greater discrimination protection." Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 819 (Mo. 2007); see also Korando v. Mallinckrodt, Inc., 239 S.W.3d 647, 649 (Mo. App. 2007) (stating that "the Missouri Supreme Court recently determined the McDonnell Douglas [Corp. v. Green, 411 U.S. 792 (1973)] burden shifting analysis no longer applies" to actions brought under the MHRA). "If the wording in the MHRA is clear and unambiguous, then federal caselaw which is contrary to the plain meaning of the MHRA is not binding." Daugherty, 231 S.W.3d at 819 (quoting Brady v. Curators of Univ. of Mo., 213 S.W.3d 101, 112-13 (Mo. App. 2006)). Nevertheless, when analyzing an employment discrimination case under the MHRA, courts are still guided "not only by Missouri law, but also federal employment discrimination cases," and federal caselaw is instructive when such caselaw is not contrary to the plain meaning of the MHRA. Cooper v. Albacore Holdings, Inc., 204 S.W.3d 238,242 (Mo. App. 2006).

The Missouri Supreme Court has stated:

> The MHRA defines "discrimination" to include "any unfair treatment based on race, color, religion, national origin, ancestry, sex, age as it relates to employment, disability, or familial status as it relates to housing." Nothing in this statutory language of the MHRA requires a plaintiff to prove that discrimination was a substantial or determining factor in an employment decision; if consideration of age, disability, or other protected characteristics

> contributed to the unfair treatment, that is
> sufficient.

*Daugherty*, 231 S.W.3d at 819 (emphasis in original) (quoting Mo. Rev. Stat. §213.010(5)). When determining whether an MHRA claim "survives summary judgment, 'a plaintiff has no higher standard to survive summary judgment than is required to submit a claim to a jury.'" *Lomax v. DaimlerChrysler Corp.*, 243 S.W.3d 474, 479 (Mo. App. 2007) (quoting *Daugherty*, 231 S.W.3d at 820). The Missouri jury instructions set forth the factors for submission of an MHRA claim to a jury as follows:

> First, defendant...discharged...plaintiff, and

> Second...one or more of the protected classifications supported by the evidence such as race...<u>was a contributing factor</u> in such...discharge..., and

> Third, as a direct result of such conduct, plaintiff sustained damage.

MAI 31.24 (6th ed. supp. 2007) (emphasis added). Accordingly, a plaintiff's claim brought under the MHRA will survive summary judgment if there is a genuine issue of material fact as to whether her age or gender <u>was a contributing factor</u> in the defendant's termination decision, and it is incumbent upon the Court to "determine whether the record shows two plausible, but contradictory, accounts of the essential facts and the 'genuine issue' in the case is real, not merely argumentative, imaginary, or frivolous." *Daugherty*, 231 S.W.3d at 820.

In this case, as with plaintiff's federal employment discrimination claim, the record fails to show two plausible, but contradictory, accounts of the essential facts or that the 'genuine issue' in the case is real. There is simply no evidence on the record that plaintiff suffered from an adverse employment decision, and, by plaintiff's own admissions at his deposition, plaintiff has no evidence that his age, gender, race, or that he had previously filed a lawsuit or complained about the PSP contributed in any fashion to the conditions of his employment.

### 3. Harassment

Finally, plaintiff asserts a claim of "retaliatory harassment" against defendant Hospital. With regard to plaintiff's claim of "retaliatory harassment," plaintiff alleges that in late June 2007, he was led to believe that his employment was going to be terminated, but that he was not terminated for two to three weeks. Plaintiff argues that letting him work with the knowledge that he was fired tormented him and his family and was done to harass him for having filed a previous lawsuit and complained about the PSP. The Court finds plaintiff brings this claim pursuant to 42 U.S.C. §1981.[16]

Section 1981 of 42 U.S.C. guarantees to all persons within the jurisdiction of the United States the same rights under

---

[16]The Court notes that plaintiff may not maintain this claim under Title VII, because this claim for retaliation was not presented at the administrative level.

the law as are enjoyed by white persons.  See 42 U.S.C. §1981; see also Campbell v. Grayline Air Shuttle, Inc., 930 F. Supp. 794, 800 (E.D.N.Y. 1996).  Although there is some overlap between Title VII and 42 U.S.C. §1981, statutorily prohibited conduct in the course of an employment relationship is actionable under 42 U.S.C. §1981. Further, "an employee may...bring an action against an employer under Section 1981 without exhausting Title VII's administrative procedures."  Id.  However, while 42 U.S.C. §1981 may support an action for racial discrimination, the Court is not aware of any case holding that a plaintiff may bring a claim for retaliation pursuant to 42 U.S.C. §1981.

Nevertheless, even if plaintiff could maintain a retaliation claim under 42 U.S.C. §1981, plaintiff's claim still fails.  For a claim of retaliation to survive a motion for summary judgment, a plaintiff must demonstrate a prima facie case of retaliation.  To meet this burden, a plaintiff must set forth evidence that shows: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.  Jackson v. United Parcel Serv., Inc., 548 F.3d 1137, 1142 (8th Cir. 2008).  With regard to the second element (establishing an adverse employment action), a plaintiff must demonstrate that a reasonable employee would have found the employer's actions "materially adverse, meaning they well might

have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (quotation omitted).

Plaintiff alleges, as the basis for the harassment, that he was allowed to continue to work two to three weeks with the knowledge that he was fired. The Court finds, as a matter of law, that defendant Hospital's action in this regard would not have dissuaded a reasonable worker from making or supporting a charge of discrimination. Accordingly, the Court finds that plaintiff fails to establish a prima facie case of retaliatory harassment, and will grant defendant Hospital's motion for summary judgment.

It is the finding of this Court that the record is bereft of sufficient evidence to support a finding that race, age, gender, or retaliation had any effect on the terms and conditions of plaintiff's employment, or to support a finding that any of the defendants conspired against or harassed plaintiff. Accordingly, as a matter of law, given the facts established by the record, no reasonable factfinder could find for plaintiff or conclude that plaintiff should be awarded damages. The Court will therefore grant summary judgment in defendants' favor.

For the above stated reasons,

**IT IS HEREBY ORDERED** that defendant Genelda Cornelison's motion for summary judgment [Doc. #76] is granted.

**IT IS FURTHER ORDERED** that defendant Mary Arnold's motion for summary judgment [Doc. #78] is granted.

**IT IS FURTHER ORDERED** that defendants Barnes-Jewish Hospital and Patrick Barnes' motion for summary judgment [Doc. #80] is granted.

**IT IS FURTHER ORDERED** that all other pending motions are denied as moot.

Dated this <u> 30th </u> day of March, 2009.

<u>/s/Donald J. Stohr        </u><br>
UNITED STATES DISTRICT JUDGE